## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **CASE NO. CR 407-126** |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| PETER J. MITCHELL, | ) | |
| | ) | |
| Defendant. | ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

NOW COMES the United States of America, by and through Edmund A. Booth, Jr., Acting United States Attorney for the Southern District of Georgia, and the undersigned Assistant U.S. Attorney, and hereby respond to Defendant Peter J. Mitchell's Motion to Suppress as follows:

Defendant moved to suppress the computer evidence seized by Government officials due to a claimed violation of the Fourth Amendment, which prohibits "unreasonable searches and seizures." U.S. Const., amend. IV. Though Defendant's supporting brief contains a narrative discussion of numerous Fourth Amendment cases, the arguments in support of his motion are much more limited. First, the Defendant claims that the initial seizure of his computer was unlawful because it was done without a warrant. Second, Defendant contends that the duration of the seizure was unlawful. Neither argument has merit. The initial seizure of the computer evidence was proper because it was seized in plain view and because exigent circumstances demanded that the evidence be seized before it could be altered or destroyed. Moreover, the continued retention of the computer pending application for a search warrant was reasonable given the Defendant's admission that the computer contained contraband, which thereby diminished if not eliminated any liberty interest the Defendant

had in that piece of property.  Finally, the agent's failure to immediately obtain a warrant, to the extent it violated the Defendant's rights, does not require the Court to impose the drastic remedy of suppression through the application of the exclusionary rule.  Defendant's motion should, therefore, be denied.

I.    The Initial Seizure of the Defendant's Computer Was Lawful

This case originated with a lead that caused agents to travel to the Defendant's home for the purpose of conducting an investigative interview.   Agents with Immigrations and Customs Enforcement ("ICE") learned that the Defendant had used a credit card to purchase something from "ADSOFT," an internet billing company, for the price of $79.95.  ADSOFT was the same billing company that processed payments to the Illegal CP website described in the search affidavit.  (See Aff. in Supp. of Search Warrant, ¶ 25).  The website, as it happened, charged subscribers $79.95 for a 20-day subscription.  (Id.).  At that point, though a reasonable suspicion existed that the Defendant had purchased a subscription to the child pornography website, the agents did not believe they had probable cause to obtain a search warrant.   (West Aff., ¶ 2) (attached as Exhibit A to the Government's response).  Accordingly, the agents conducted what is known as a "knock-and-talk" interview with the Defendant.

That interview was purely consensual.  (Id.) (discussing fact that Defendant allowed agents into home for an interview).  At no point did the agents make any show of force that would have transformed the consensual interview into a custodial interrogation, (see id.), and though Defendant's motion references the lack of any Miranda warning, he at no point even suggests that the Defendant's Fifth Amendment rights were violated.   During that consensual interview, the Defendant was

pointedly asked whether there was any child pornography on any of the computers in his residence, and the Defendant responded by saying "Yes, probably." (Id.). The Defendant then told Special Agent West that the computer containing child pornography was located downstairs. (Id.). The Defendant then allowed the agents to do a preview search of his wife's computer, which was located in the upstairs portion of the residence. (West Aff., ¶ 3). Though Defendant indicated that he would not consent to a similar search of his computer (located downstairs), when the agents asked the Defendant to show them where the computer with contraband was located, the Defendant led them to the site. (West Aff., ¶ 4). Once there, Special Agent West seized the hard drive and logged it into evidence. (Id., ¶¶ 4-5).

The seizure of that computer was entirely reasonable and did not in any way contravene the Defendant's Fourth Amendment rights. "Child pornography is illegal contraband," United States v. Kimbrough, 69 F.3d 723, 731 (5th Cir. 1995), and "[c]ontraband may be seized without a warrant." United States v. Tabor, 722 F.2d 596, 599 (10th Cir. 1983) (approving seizure of drug items not listed in a warrant). Specifically, "[t]he 'plain view' doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006). See also Bretti v. Wainwright, 439 F.2d 1042, 1046 (5th Cir. 1971) ("[I]t has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. . . .") (quoting Marshall v. United States, 422 F.2d 185, 188 (5th Cir. 1970)).

In Smith, officers were authorized by a search warrant to search for evidence of illicit drug

activity. While there, the officers searched through a lockbox in the defendant's residence, a lockbox that contained photographs that appeared to contain child pornography. Smith, 459 F.3d at 1291. Because the officers were lawfully entitled to look in the box under the terms of the warrant, the only issue pertaining to the seizure of the photographs was whether there was probable cause to believe that the photographs contained child pornography. Id. ("The only remaining question, then, is whether it was immediately apparent to the officers–whether they had probable cause to believe–that among what they found in the lockbox, was evidence of child pornography."). Because it was obvious to the officers that the photographs contained sexually explicit images of individuals under the age of eighteen, the seizure of those photographs was upheld under the plain view doctrine. Id.

Here, Special Agent West was conducting a consensual interview when he asked the Defendant to escort him to the computer where the child pornography was located. (West Aff., ¶ 4). The Defendant then led Special Agent West to the subject computer; at no point did the Defendant express any objection to the Defendant's request to see the computer. Special Agent West, having been given consensual access to the location of the computer, and with its incriminating character immediately apparent due to the Defendant's confession, was entitled to seize that evidence without a warrant. See Smith, 459 F.3d at 1291. See also United States v. Tucker, 305 F.3d 1193, 1202-03 (10th Cir. 2002) (upholding seizure of computer under plain view doctrine where agents, who were entitled to be in parolee's residence, had probable cause to believe that computer contained child pornography based on tip from another individual and fact that computer had just been used to visit a pre-teen website).

The Defendant, of course, may argue that he felt compelled to take the agents to the computer, particularly after telling them that he did not want them to do a preview search of his

computer (like the one they had executed on his wife's computer).  The agents, however, honored

the Defendant's request and simply asked if they could see where the computer containing child

pornography was located.  (West Aff., ¶ 4).  Having been granted consensual access to that site,

Special Agent West observed a known item containing contraband and properly seized that evidence.

Furthermore, even if the Court were to find that the agents lacked the Defendant's consent

to physically observe the computer, the exigencies of the circumstances demanded that the agents

immediately seize the computer evidence before it could be altered or destroyed.  "A warrantless

search is allowed . . . where both probable cause and exigent circumstances exist."  United States

v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991).  For instance, a warrantless seizure is justified where

there is a "risk of loss, destruction, removal, or concealment of evidence . . . ."  United States v.

Santa, 236 F.3d 662, 669 (11th Cir. 2000) (quoting United States v. Blasco, 702 F.2d 1315, 1325

(11th Cir. 1982)).  Because computer evidence is so peculiarly sensitive to deletion or alteration, (see

West Aff., ¶ 6), the agents could not ensure the integrity of the evidence by waiting to obtain a search

warrant. See United States v. Walser, 275 F.3d 981, 985 (10th Cir. 2001) (recognizing that one of the

dangers inherent in searches and seizures of computer evidence is the fact that such evidence is

"vulnerable to tampering or destruction.").

Defendant theorizes that the agents could have posted an officer at the scene while another

officer obtained the warrant to seize the computer.  There are two problems with this argument.

First, without knowing where exactly the computer was located, the posted agent would have nothing

to protect.  At a minimum, the exigencies of the situation would demand that the agent seek out and

find the computer in question in order to ensure its safety, and once in the computer's presence, the

agent would have had the lawful right to seize an item known to contain contraband under the plain

view doctrine.[1]  Second, because computer evidence can be so easily manipulated, posting an agent

on the scene is not a sufficient protection against destruction or deletion of evidence.  As Special

Agent West notes in his affidavit, even striking a single key on a computer can be enough to wipe

all evidence from a computer hard drive. (West Aff., ¶ 6).  While the Government does not wish to

overstate the physical capacity of the Defendant (or anyone else living or staying at the residence),

common sense suggests that almost anyone could pose a threat to destroy evidence when all that is

potentially required is a single tap on a keyboard.

In short, the seizure of this admitted contraband was entirely reasonable under the plain view

doctrine and given the exigencies of the situation.    Thus, there was no underlying Fourth

Amendment violation relating to the initial seizure of the evidence.


II.      Retention of the Evidence Pending Application for a Search Warrant Was Reasonable
         Here.

The Defendant also suggests that even if the initial seizure was reasonable, the agent's failure

to secure a warrant to search the computer in a more timely fashion transformed what was an

otherwise lawful seizure into a Fourth Amendment violation.  Defendant's argument ignores the fact

that the computer was lawfully seized without a warrant under the plain view doctrine and that no

subsequent warrant was required in order to authorize its continued retention by law enforcement

officials.  And, even if the agents had a duty to secure a warrant to justify the continued retention of

that evidence, the agent here acted reasonably in securing a warrant.  Consequently, there was no

-----

[1]Restraining the Defendant (so that he could not alter or destroy the computer evidence)
was not a sufficient option, because at the time the computer was seized, the agents had no
reliable information about whether there were any individuals other than the Defendant and his
wife who were present or living at the residence.  (West Aff., ¶¶ 2 and 6).

Fourth Amendment violation here.

Defendant, in attacking the length of the delay between the seizure of the computer and the warrant authorizing the search of the contents therein, cites to two cases, United States v. Dass, 849 F.2d 414 (9th Cir. 1988), and United States v. Puglisi, 723 F.2d 779 (11th Cir. 1984). Dass involved the detention of numerous packages believed to contain illegal narcotics (with the length of the delay varying from 7 to 23 days); Puglisi involved the detention of luggage where there was a reasonable suspicion that the luggage contained illegal contraband. In both cases, courts concluded that the delay between the initial seizure and the request for a warrant was unreasonable. Neither case, however, addressed a situation such as this one, where admitted contraband was seized in plain view. To the contrary, in both Dass and Puglisi, agents suspected or believed that the items contained contraband, but the existence of contraband or evidence in either container was not "immediately apparent." Thus, in both cases, the initial seizure was a limited one for the purpose of obtaining judicial approval of the search which might confirm the existence of evidence or contraband.

In this case, by contrast, the Defendant admitted that the computer in question contained child pornography. As noted supra, child pornography is illegal contraband, and agents are authorized to seize contraband or evidence in plain view without a warrant. The agents, then, did not need judicial authorization to retain the evidence that was already lawfully seized pursuant to the plain view doctrine. Indeed, a contrary holding would require law enforcement officials who seize cocaine in plain view to go to a magistrate judge, after having lawfully seized such evidence, to seek approval

7

for the continued retention (or testing) of such evidence pending trial.[2]  That is not what the law

requires.[3]

Furthermore, to the extent a warrant was required in order to justify the continued retention

of the computer here, the agent here obtained a warrant within a reasonable timeframe given the facts

in this case.  Defendant invites this Court to conduct a "less intrusive" means analysis in which the

focus is on what the agents could have done, not on whether what they did was reasonable under the

circumstances.  "[T]he Fourth Amendment does not require the least intrusive alternative; it only

requires a reasonable alternative."  United States v. Prevo, 435 F.3d 1343, 1348 (11th Cir. 2006)

(discussing search procedures for a work release center).  See also United States v. Sharpe, 470 U.S.

675, 686-87, 105 S.Ct. 1568, 1575-76 (1985) ("A creative judge engaged in post hoc evaluation of

police conduct can almost always imagine some alternative means by which the objectives of the

police might have been accomplished. . . .  The question is not simply whether some other alternative

---

[2]Defendant may argue that this case can be distinguished from the plain view seizure of narcotics because in the cited hypothetical, the law enforcement official visually observed the illegal contraband.  In this case, by contrast, the agent only observed the computer which was believed to contain child pornography.  The plain view doctrine, however, authorizes seizure of both contraband and evidence whose incriminating character is "immediately apparent."  See Smith, 459 F.3d at 1253 (recognizing that plain view doctrine permits seizure of contraband and items that "may be used as evidence against the defendant."); United States v. Tucker, 305 F.3d at 1202-03 (10th Cir. 2002) (upholding seizure of computer under plain view doctrine even though agents did not observe actual child pornography on the computer; tip from source and fact that computer had been on a pre-teen website was enough to establish probable cause to believe that computer contained illegal child pornography).  And, where a person admits that an item contains illegal contraband, the incriminating character of a piece of evidence is more immediately apparent than many visual observations,  observations that often must be confirmed with laboratory testing.

[3]That is not to suggest that law enforcement agents can seize property and hold such property indefinitely merely by claiming that the property is evidence or contraband.  A person aggrieved by the seizure of property in a criminal investigation can ask that such property be returned under Fed.R.Crim.P. 41(g).  No such request was made here.

was available, but whether the police acted unreasonably in failing to recognize or to pursue it.").

"The touchstone of the Fourth Amendment is reasonableness." Ohio v. Robinette, 519 U.S. 33, 39,

117 S.Ct. 417, 421 (1996). The issue here, then, is not whether the agent could have obtained a

warrant in a more timely fashion; instead, the Court must decide whether the agent acted reasonably

considering all the circumstances of this case.

 In cases where defendants have challenged the length of a seizure pending issuance of a

warrant, courts have considered a number of factors in assessing the reasonableness of the

government's conduct.[4] "The existing caselaw suggests three presumptively-relevant factors: (1)

investigatory diligence, (2) length of detention, and (3) information conveyed to the suspect." United

States v. LaFrance, 879 F.2d 1, 7 (1st Cir. 1989). See also United States v. Banks, 3 F.3d 399, 402

n.1 (11th Cir. 1994) (discussing three factors cited by La France in evaluating reasonableness of

government's conduct). All of these factors weigh in favor of a finding of reasonableness here.

 First, any delay between the seizure and the application for a warrant was not the result of

a lack of diligence on the part of the government. When evaluating the government's level of

diligence, courts consider several factors that may justify a delay in seeking a warrant, including:

(1) the interlude of weekends, see United States v. Gill, 280 F.3d 923, 929 (9th Cir. 2002) (no lack

of diligence where investigation began at the end of the week and warrant was obtained the

following week); (2) the fact that a law enforcement agent may have had other legitimate priorities,

see United States v. Adams, No. 98-30180, 1999 WL 274666, at *1 (9th Cir. Apr. 23, 1999)

(concluding that there was no lack of diligence in seeking a warrant where there was a weekend

---

 [4]None of these cases involved the seizure of evidence in plain view; thus, for the reasons
discussed supra, the Government does not believe that the standards employed therein must be
met in this case.

between initial seizure and where agents were occupied with a priority case); and (3) delay necessitated by review of the warrant by government attorneys, see id. (recognizing that delay was reasonable where warrant was reviewed by U.S. Attorney's office over a weekend).

As detailed in Special Agent West's Affidavit, the delay here was largely the product of two factors: (1) the fact that the investigation began at the end of the week and (2) Special Agent West's absence during the following two weeks for a pre-assigned training seminar in Virginia. (West Aff., ¶ 5). After Special Agent West returned, he provided a draft copy of the search warrant affidavit to the Assistant U.S. Attorney responsible for the case, though that individual was out of the office on Monday, March 12. (Id.). Upon conferring with the Assistant U.S. Attorney on Tuesday, March 13, the warrant was reviewed and presented two days later, on Thursday, March 15, 2007. (Id.). There is simply no indication that this investigation was conducted at a "leisurely place." Cf. Gill, 280 F.3d at 929 (reversing district court's suppression of evidence where there was no evidence that agents acted in dilatory fashion in seeking warrant). Though the Government concedes that the warrant might have been obtained in more timely manner, that is not the test:

> We fully agree that, in hindsight, the police may not have acted in the most expeditious manner; but government agents are neither seers nor paragons, held to a standard of predicting each twist and turn of future events and achieving near perfect results. Diligence, we think, is fairly characterized by steady, earnest, energetic, and attentive application and effort toward a predetermined end.

LaFrance, 849 F.2d at 8. Here, the case agent's actions were characterized by earnestness and attentiveness, particularly given the fact that he was out of town for a lengthy period of time and in a case where the defendant admitted that the item in question contained contraband. If the facts were different – had the agent, for instance, seized the evidence where the presence of contraband was less

10

certain – more diligence might have been required. But where the Defendant had no possessory right to retain the evidence given his admission that it contained illegal contraband, the agent did not act unreasonably by applying for a search warrant after his return from the training seminar.

Similarly, the length of the detention here did not transform the seizure into an unlawful one under the Fourth Amendment. It bears pointing out that the length of detention is only one aspect of the reasonableness of a particular intrusion, and it is an aspect that should not be given undue weight in making that determination:

> [T]ime of detention is not necessarily synonymous with, or even a reliable proxy for, intrusiveness of detention. Where inanimate objects are concerned, detention is merely the period during which government agents exercise detention and control over the property . . . Consequently, though the duration of a detention is an important consideration in evaluating the intrusiveness of [a seized item's] determent, it is neither the mirror image of unreasonableness nor the yardstick against which the suitability of police procedures must inevitably be measured. In the ordinary case, a judge will not be able to calculate whether an intrusion goes beyond the pale merely by holding a stop watch to a sequence of events.

LaFrance, 879 F.2d at 6 (internal footnotes and citations omitted). Moreover, "[t]he mere showing of delay does not per se transform the legal seizure . . . into a violation of the Fourth Amendment." United States v. Outland, 476 F.2d 581, 583 (6th Cir. 1973) (internal citations omitted).

Though Defendant cites to Dass, where the Ninth Circuit concluded that delays ranging from 7 to 23 days were unreasonable, another court held that a delay up to 85 days was not per se unreasonable.[5] See Outland, 476 F.2d at 583 (concluding that delay between seizure of contraband

---

[5]Dass was also the subject of a vigorous dissent by Judge Alarcon, who argued that the government acted reasonably in securing the warrants there given the volume of evidence involved and other circumstances facing the government. 849 F.2d at 416-18 (Alarcon, J., dissenting). Dass has also been criticized by other courts for suggesting that there is some "bright-line" rule for presenting a warrant after seizing evidence. See, e.g., United States v. Mayomi, 873 F.2d 1049, 1054 n.6 (7th Cir. 1989) (expressly rejecting suggestion in Dass that Supreme Court created an outer boundary of 29 hour detention for packages in United States v.

and seeking of warrant was not per se unreasonable but remanding for evidentiary hearing to adduce reasons for delay and whether delay caused any prejudice to the defendant).  In any event, the length of detention must be considered in the context of a particular case.  See United States v. Aldaz, 921 F.2d 227, 230 (9th Cir. 1990) (holding that reasonableness of delay in seeking warrant must be evaluated in light of facts of each case); United States v. Mayomi, 873 F.2d 1049, 1054 n.6 (7th Cir. (1989) (concluding that reasonableness of detention must be evaluated on a case-by-case basis); LaFrance, 879 F.2d at 6 ("[W]hat is reasonable in one type of situation may not be reasonable in the other.").

Two significant factors make the delay here reasonable.  First, this is not a case where the seizure of property substantially limited the Defendant's liberty interests.  In cases where luggage is seized, for instance, courts have recognized that the seizure of luggage in many ways limits an individual's ability to travel, thus making delays in seeking a warrant less tolerable.  See LaFrance, 879 F.2d at 9 ("Time qua time is of concern in the luggage seizure cases because of the concomitant impingence on liberty."); United States v. Place, 462 U.S. 696, 708, 103 S.Ct. 2637, 2645 (1983) (recognizing that seizure of luggage may cause a person to alter his or her travel plans "in order to remain with his luggage or to arrange for its return.").  Here, by contrast, the seizure only affected the Defendant's possessory interest in his computer (to the extent one even existed after he admitted the computer contained contraband).  "While the police are not free to dispossess an individual at will, they are subject to fewer restraining circumstances where they trammel no other recognized interest apart from that of possession alone."  LaFrance, 879 F.2d at 6.  Second, because this case involved the seizure of admitted contraband, there was no danger that the delay might result in unfair prejudice

---

Van Leeuwen, 397 U.S. 249, 90 S.Ct. 1029 (1970)).

to the defendant. In Dass, there was a greater need for timely action because of the potential prejudice to an individual if the government's suspicions were unfounded. But where a defendant admits to the presence of contraband, there is no danger that the government's seizure of evidence will unfairly deny an individual the right to exercise dominion and control over property in which he has a lawful interest.[6] Under the specific circumstances of this case, the delay in seeking a warrant was entirely reasonable.

Finally, Defendant does not suggest that the information conveyed to him misled him in a way that caused any sort of unfair prejudice. Conveyance of information is relevant to the reasonableness inquiry because that information can affect a person's liberty interest, particularly where a person's travel possessions are seized. Cf. Place,, 462 U.S. at 708, 103 S.Ct. at 2645. Here, the agent told the Defendant that he was seizing the computer so that it could be searched based on the admissions he made about it containing child pornography. He left his contact information in the event the Defendant had questions, (see West Aff., ¶ 4), and the Defendant's attorney contacted the U.S. Attorney's Office and the FBI shortly after the seizure of the evidence. (See Exhibit B, attached to

---

[6]In his affidavit, Defendant suggests that he was denied access to the legitimate items on his computer (medical records, financial information, etc.). To the extent he is arguing that he should have retained access to those items after the seizure of the unlawful ones, that argument is foreclosed by the Eleventh Circuit's decision in Smith. There, the defendant complained that the officers seized numerous photographs under the plain view doctrine without individually assessing whether each photograph contained child pornography. The court rejected the claim, relying on several prior Eleventh Circuit decisions allowing seizure of an entire series of documents or files where one of the documents contained therein was legitimately seized under the plain view doctrine. Smith, 459 F.3d at 1292. See also United States v. Slocum, 708 F.2d 587, 606 (11th Cir. 1983) (permitting seizure of entire file where individual documents in file could be legitimately seized under plain view doctrine); United States v. Terry, 240 F.Supp.2d 922, 928-29 (S.D. Iowa 2002) (noting that where child pornography is packaged with adult pornography, officers are not required "to separate the wheat from the chaff prior to making a seizure.").

the Government's response).  At no point did the Defendant inquire about the status of his computer or any of the contents therein.  Accordingly, there was no lack of communication that affected a significant liberty interest of the Defendant.

In short, the warrant here was diligently obtained without unnecessary delay.  Consequently, even though the Government does not believe that a warrant was required to justify the seizure of the computer, the agent here obtained a search warrant within a reasonable time given the circumstances of this case.

III.  Any Fourth Amendment Violation Here was De Minimis and Does Not Require the Application of the Exclusionary Rule.

In the unlikely event that the Court were to conclude that the Government violated the Defendant's Fourth Amendment rights here by not obtaining a warrant in a more timely fashion, the Government maintains that any violation would not require application of the exclusionary rule. "Whether the exclusionary sanction is appropriately imposed in a particular case . . . is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'" United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. 3405 (1984) (quoting Illinois v. Gates, 462 U.S. 213, 223, 103 S.Ct. 2317 (1983)).  As the Supreme Court recently noted in Hudson v. Michigan, "[s]uppression of evidence . . . has always been our last resort, not our first impulse." — U.S. —, 126 S.Ct. 2159, 2163 (2006).  The exclusionary rule imposes "'substantial social costs,' which sometimes include setting the guilty free and the dangerous at large." Id. (internal citations omitted) (quoting Leon, 468 U.S. at 907, 104 S.Ct. 3405).  Given the "rule's 'costly toll' upon truth-seeking and law enforcement objectives," those who seek to apply the rule face a "high obstacle." Id. (quoting Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 364-65, 118 S.Ct. 2014 (1998)).

14

In the instant case, application of the rule is inappropriate for several reasons. First, as the Supreme Court recognized in <u>Hudson</u>, the exclusionary rule can only be applied where the deterrence benefits from the rule outweigh the substantial social costs resulting from its application. Because the deterrence benefits here are slight and the costs are enormous, application of the rule cannot be justified in these circumstances. Second, the government agent who conducted the search relied in good faith on a search warrant, thereby triggering the good faith exception to the exclusionary rule recognized by the Supreme Court in <u>Leon</u>. Finally, to the extent there was a constitutional violation, that violation is too attenuated from the discovery of the evidence to justify application of the exclusionary rule here.

A.   <u>The Substantial Social Costs Resulting from the Exclusion of Highly Probative Evidence of Criminal Guilt Outweigh Any De Minimis Deterrence Benefits Resulting from Application of the Exclusionary Rule in this Context.</u>

Excluding the computer evidence in this case would be a drastic and extraordinary remedy for a rather minimal (and, in the Government's estimation, non-existent) violation of the Defendant's rights under the Fourth Amendment. The Fourth Amendment does not require "the adoption of every proposal that might deter police misconduct." <u>Hudson</u>, — U.S. at —, 126 S.Ct. at 2166. To the contrary, "the exclusionary rule has never been applied except where its deterrence benefits outweigh its substantial social costs. . . ." <u>Id.</u> at 2165 (citations and internal quotation marks omitted). Those costs include the obvious consequence of releasing dangerous criminals due to the exclusion of relevant evidence of criminal guilt, <u>see id.</u>. In addition, by essentially forcing an agent to go directly to a magistrate judge to avoid losing potentially dispositive evidence, agents may divert their resources from other, more pressing law enforcement priorities. While Defendant may see no harm from such a rigid application of the Fourth Amendment, the opportunity costs for law enforcement

officials who are tasked with using finite resources to address a seemingly endless number of criminal violations could be substantial.

Against these substantial costs are negligible deterrence benefits. "To begin with, the value of deterrence depends upon the strength of the incentive to commit the forbidden act." Id. at —, 126 S.Ct. at 2166.    Where a defendant admits to possessing an item containing contraband, the government has no incentive to violate that person's Fourth Amendment rights by seizing evidence and holding onto it for any length of time.  Probable cause is beyond question, so there is no need to seize evidence, conduct more investigation in order to strengthen the government's probable cause showing, and then present that evidence to the magistrate judge.   Another factor courts consider in measuring the deterrence value of the rule in a particular context is the availability of alternative remedies.  Here, there are two alternative remedies.  First, a person aggrieved by a claimed Fourth Amendment violation can bring suit under 42 U.S.C. § 1983.  Cf. id.. at —, 126 S.Ct. at 2167-68 (noting that with respect to knock-and-announce violations, civil liability may be an effective deterrent).  Second, a person who wishes to have their property returned can file a motion for the return of such property.  See Fed.R.Crim.P. 41(g).

This is a case where the enormous costs of suppressing the computer evidence – evidence which forms the bulk of the Government's case against the Defendant for possessing thousands of images of child pornography – easily outweigh the minimal benefits from a reflexive application of the exclusionary rule.  "'A criminal prosecution is more than a game in which the Government may be checkmated and the game lost merely because its officers have not played according to the rule.' The penalties visited upon the Government, and in turn upon the public, because its officers have violated the law must bear some relation to the purposes to which the law is to serve." United States

v. Ceccolini, 435 U.S. 268, 279, 98 S.Ct. 1054, 1061-62 (1978) (quoting McGuire v. United States, 273 U.S. 95, 99, 47 S.Ct. 259, 260 (1927)).  Here, even if a violation can be found, it is not one that requires suppression of the computer evidence seized by the Government as a result of the Defendant's admissions.

B.    Because the Agents Here Relied in Good Faith on a Search Warrant, the Leon Exception to the Exclusionary Rule Applies.

In United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405 (1984), the Supreme Court adopted a good faith exception to the exclusionary rule for cases, such as this one, where the law enforcement officer conducting a search acted in objectively reasonable reliance on a warrant.  Where an agent relies on a warrant authorizing a search, as the agent did here, the good faith exception to the exclusionary rule applies unless (1) the magistrate judge issuing the warrant wholly abandoned his judicial role; (2) the magistrate judge was misled by information in an affidavit that the affiant knew was false or would have known was false were it not for his reckless disregard for the truth; or (3) the warrant was so deficient on its face that the arresting officer could not reasonably presume it to be valid.  Because the agent here relied in good faith on the warrant, and because none of three qualifications to the Leon exception apply, application of the exclusionary rule is not appropriate here.

Relying on Leon, the Seventh Circuit rejected an argument similar to the one presented by the Defendant here.  In United States v. Pitts, 322 F.3d 449, 454 (7th Cir. 2003), the defendants complained that packages seized by the postal service were unlawfully detained for a few days prior to the postal service's application for a search warrant.  Because the defendants were not arguing that the judge had abandoned his judicial role or was misled by any particular information in the affidavit, the only issue was whether the agent who executed the warrant "should have known that the search of the package was illegal despite the magistrate judge's authorization."  Id. at 455.  Given the

caselaw and the fact that the judges in the lower court had differed over the reasonableness of the length of the detention, the court held that the officer could not be charged with knowing that the search was illegal. Accordingly, the court held that the good faith exception for reasonable reliance on a warrant applied and affirmed the denial of the motion to suppress. Id.

The same conclusion should be applied by the Court here. Before searching the Defendant's computer, Special Agent West obtained a search warrant, a warrant upon which he relied in good faith. (West Aff., ¶ 7). There is no suggestion in Defendant's motion that the Magistrate Judge who authorized the warrant abandoned his role; nor has Defendant pointed to knowingly false information provided by the affiant. At best, Defendant is arguing that the agent should have known that his reliance on the warrant was illegal despite the Magistrate Judge's authorization. That conclusion is untenable in a situation such as this, where there is no existing caselaw to support Defendant's claim that admitted contraband cannot be seized without a warrant (or, alternatively, that any seizure must be immediately followed with an application for a warrant). Because the agent here relied in good faith on a seemingly valid warrant, application of the exclusionary rule is forbidden under Leon.

C.     The Discovery of the Child Pornography on the Defendant's Computer was Too Attenuated from Any Claimed Constitutional Violation to Require Application of the Exclusionary Rule.

Application of the exclusionary rule is not required where the causal connection between the constitutional violation and the discovery of evidence is remote. See Hudson, — U.S. at —, 126 S.Ct. at 2159. In Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 417 (1963), the Court explained that in deciding whether to apply the exclusionary rule, "[t]he more apt question . . . is whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality . . . ." In approving other exceptions to the

18

exclusionary rule, such as the independent source doctrine and the inevitable discovery doctrine, the Court has recognized that although the government should not benefit from its unlawful conduct, the government should also be in no "worse position simply because of some earlier police error or misconduct." Nix v. Williams, 467 U.S. 431, 443, 104 S.Ct. 2501, 2508 (1984). The rationale for these exceptions "is closely related in purpose to the harmless error rule" in that they prevent "setting aside convictions that would have been obtained without police misconduct." Id. at 444, n.4, 104 S.Ct. at 2509.

In this case, excluding the computer evidence would put the Defendant in a better position than he would have been had there been no (alleged) misconduct. This is not a case in which the Government "exploited" any putative Fourth Amendment violation to discover evidence that it would not otherwise possess. The delay in seeking the warrant, to the extent there was one of constitutional significance, had no effect whatsoever on the ultimate discovery of the evidence. Had the agent applied for the warrant in a more timely fashion, the search would have uncovered the same evidence. The delay in no way "aided" the government. Consequently, application of the exclusionary rule here would put the Defendant in a better position than he would have been had no Fourth Amendment violation occurred. Cf. United States v. Brown, 328 F.3d 352, 357 (7th Cir. 2003) (upholding application of inevitable discovery doctrine where agents lacked valid consent to search property because agents had probable cause and would have procured search warrant in the absence of the invalid consent).

In short, any alleged constitutional violation was not "exploited" by the Government. The Government discovered evidence that it would have found even in the absence of a constitutional violation. Accordingly, the causal connection between any violation and the discovery of the

19

evidence is too remote to justify suppression of such highly probative evidence.

## **CONCLUSION**

The agents here lawfully seized a computer which Defendant admitted contained contraband. Their retention of evidence the Defendant had no legal right to possess did not violate the Fourth Amendment, and to the extent any constitutional violation occurred, there is simply no justification for imposing the drastic remedy of suppression here. Thus, for the reasons stated herein, the Defendant's motion should be denied.

Respectfully submitted, this 14th day of May, 2007.

EDMUND A. BOOTH, JR.,
ACTING UNITED STATES ATTORNEY


Stephen K. Marsh
Assistant U.S. Attorney
Georgia Bar No. 471398


100 Bull Street
Savannah, Georgia 31401
(912) 652-4422

# EXHIBIT A

# AFFIDAVIT

**STATE OF GEORGIA**        :

**COUNTY OF CHATHAM**      :

The undersigned, having been duly sworn, deposes and states upon oath that:

1. My name is Thomas D. West, Jr.  I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), and I have been employed in this capacity for approximately 4 years.  I am currently assigned to the Resident Agent in Charge field office in Savannah, Georgia.

2. ICE/Savannah received information that Peter MITCHELL was allegedly involved in the purchasing of a subscription to a website that contained images and movies that depicted child pornography. Credit card statements revealed that MITCHELL made purchases through ADSOFT, a billing company for an illegal child pornography website, and that the purchase prices corresponded to the price charged by the illegal website for subscriptions.  On February 22, 2007, Special Agent (S/A) Josh Hayes, FBI/Savannah, and Thomas West, ICE/Savannah, conducted a knock and talk investigation at the residence of Peter Mitchell located at 171 Yam Gandy Road, Savannah, Georgia. The knock and talk investigation was conducted at approximately 1100 hours on February 22, 2007. After a knock on the door, MITCHELL met S/A West and S/A Hayes at the door. MITCHELL allowed S/A West and S/A Hayes to enter the residence and ask questions relating to the investigation. MITCHELL led S/A West and S/A Hayes into the living room area of the residence located on the first floor.  The knock-and-talk investigation was conducted freely and voluntarily, and at no point did either agent use force or display force in a threatening or coercive manner.  S/A West asked MITCHELL if there was anyone else inside the residence and MITCHELL stated there was not. Neither S/A Hayes nor S/A West could verify that no one else was inside the residence and there was no reliable information to determine whether other individuals would have been present at the residence. S/A West then started the interview and told MITCHELL that a credit card that belonged to him was used to purchase a membership to a website that contained child pornography. S/A West then asked MITCHELL if he had purchased any memberships to any pornography websites (adult or other) within the last year. MITCHELL did say that he had purchased a membership to an adult pornography website and a teen website. S/A West asked MITCHELL how many computers were in the residence. MITCHELL stated that he primarily used a computer located downstairs and his wife used a laptop computer located upstairs. S/A West then asked MITCHELL if there was any illegal content on any of the computers in the residence and MITCHELL responded by saying, "Yes, probably." S/A West followed up on that response by asking if child pornography would be found on a computer in the residence and again MITCHELL responded

by saying, "Yes, probably." S/A West asked MITCHELL in which computer the child pornography would be located. MITCHELL stated that the computer downstairs would contain the illegal content.

3. S/A West asked MITCHELL if he minded S/A West and S/A Hayes looking at the computers in the residence. MITCHELL agreed to give consent to search the laptop computer upstairs, but did not give consent for the computer downstairs. MITCHELL stated that he did not want the computer downstairs searched, so S/A West advised him that the computer would not be searched, but that the hard drive would probably be seized and a search warrant obtained to search the contents of the drive based upon his admission that child pornography would be located on the computer. MITCHELL then signed a written consent form granting the consent for the laptop and accompanied S/A West and S/A Hayes upstairs for the forensic preview. S/A West found a Dell Inspiron B130 laptop computer bearing serial number JZVVH91 on a computer desk. S/A West removed the hard drive, a Western Digital WD400VE 40 GB hard drive bearing serial number WD – WXEZ05380571, and installed a write block device to preview the contents of the drive using Encase forensics software. MITCHELL was present in the room while the preview was conducted. The preview results showed no evidence of child pornography or illegal activity on the hard drive. The write block device was then taken off of the hard drive and the hard drive was re-installed in the laptop. S/A West then started the laptop in the presence of MITCHELL to ensure the laptop was still in working order. The laptop was found to be in good working order and then was powered off.

4. S/A West then asked MITCHELL if he would take S/A West and S/A Hayes to the computer downstairs and MITCHELL then accompanied S/A West and S/A Hayes into one of the downstairs rooms where the second computer was located in plain view from the doorway. S/A West notified MITCHELL that the hard drive in that computer was going to be removed and seized pursuant to MITCHELL'S admission that child pornography would be located on the hard drive. S/A West then proceeded to remove the hard drive from the computer, a Dell Dimension 3000 bearing serial number 1R4DZ51. S/A West logged the information pertaining to the hard drive, Western Digital WD1600 160GB bearing serial number WCAL91591292, on a property receipt and gave MITCHELL a copy. S/A West and S/A Hayes then concluded the knock and talk investigation and left the residence after leaving a copy of S/A West's business card with MITCHELL.

5. A search warrant affidavit was presented to and subsequently signed by United States Magistrate Judge G.R. Smith on March 15, 2007. Although the hard drive was seized on February 22, 2007, the search warrant could not be secured until March 15, 2007 due to the fact that S/A West had scheduled training to attend in Fairfax, Virginia from Monday February 26, 2007 to Friday March 9, 2007 and returning to the office on March 12, 2007.  S/A West forwarded a draft copy of the search warrant affidavit to Assistant U.S. Attorney Stephen Marsh on March

12, 2007. Mr. Marsh was out of the office that day, but after he returned, a revised affidavit was submitted to the Magistrate Judge on March 15, 2007.

6. While S/A West was attending training, the hard drive was secured in the ICE/Savannah evidence room.

7. The hard drive was removed and seized the day of the knock and talk investigation due to the need for preserving the evidence on the hard drive. Past experiences in cyber investigations have revealed that certain settings, such as "hot keys", can be set-up on a computer so that when a certain key or combination of keys are pressed, potential evidence on a hard drive can be corrupted or wiped or otherwise destroyed to the extent that the evidence cannot be recovered. Due to the fact that there was no reliable information to determine if anyone would or would not have been inside the residence and that circumstances like this could exist, it was determined that the evidence could be best preserved by removing the hard drive at the time of the search and securing the drive until a search warrant could be issued.

8. The search warrant issued in this case was issued due to the fact that MITCHELL made a voluntary admission that child pornography would be located on that specific hard drive and probable cause was derived specifically from that admission. S/A West relied on the issuance of that warrant to conduct the search of MITCHELL'S computer. The hard drive was not viewed, accessed, or manipulated from the time the hard drive was taken from MITCHELL'S residence to the time the search warrant was signed and issued by Judge Smith.

Sworn and subscribed this ___14th___ day of May, 2007.

_____
Thomas D. West Jr.
Special Agent, ICE

# EXHIBIT B

# ZIPPERER, LORBERBAUM & BEAUVAIS

ATTORNEYS AT LAW
301 W. YORK STREET
SAVANNAH, GEORGIA 31401

**ALAN L. ZIPPERER
*RALPH R. LORBERBAUM
STEVEN L. BEAUVAIS
ERIC R. GOTWALT
AMIT M. NAVARE

February 27, 2007

PLEASE REPLY TO
POST OFFICE BOX 9147
SAVANNAH, GEORGIA 31412
PHONE (912) 232-3770
FAXS (912) 232-0643
www.zlblaw.com

Joshua W. Hayes, Special Agent
Federal Bureau of Investigation
220 East Bryan Street
Savannah, GA 31401

    Re: Mr. Peter J. Mitchell

Dear Agent Hayes:

    Please be advised that I represent Peter J. Mitchell in regard to your current investigation. Please be advised that based on my advice, Mr. Mitchell is going to exercise his constitutional rights, including the right to remain silent from this point forward. Mr. Mitchell requests that any and all contact with him be through counsel. By his signature below, Mr. Mitchell personally asserts his rights.

    I look forward to working with you on this matter and hope we are able to reach a fair and just resolution. Please do not hesitate to give me a call if you have any questions.

        Sincerely,

        Steven L. Beauvais

    I desire that all contact with me be through my attorney. It is my intention to exercise my right to counsel, right to remain silent and any and all other constitutional rights.

        Peter J. Mitchell

SLB/rhs

# ZIPPERER, LORBERBAUM & BEAUVAIS
### ATTORNEYS AT LAW
301 W. YORK STREET
SAVANNAH, GEORGIA 31401

**ALEX L. ZIPPERER
*RALPH R. LORBERBAUM
STEVEN L. BEAUVAIS
ERIC R. GOTWALT
AMIT M. NAVARE

PLEASE REPLY TO
POST OFFICE BOX 9147
SAVANNAH, GEORGIA 31412
PHONE: (912) 232-3770
FAX: (912) 232-0643
www.zlblaw.com

March 8, 2007

Stephen Marsh, AUSA
United States Attorney's Office
P. O. Box 8970
Savannah, GA 31412

RE:    Peter J. Mitchell

Dear Steve:

Please be advised that I have been retained by Peter J. Mitchell in reference to a current investigation.  Mr. Mitchell was visited by Secret Service Agent Tom West and FBI Agent Josh Hayes in late February in relation to a child pornography investigation.

I spoke briefly with Agent Hayes the other day and advised him of my representation and he advised me to contact you and Agent West.  Enclosed please find a letter which is addressed to Agent Hayes indicating that Mr. Mitchell has retained counsel and requests that all future contact be through counsel.  By copy of this letter, I am providing this information also to Agents West and Hayes.

I understand Agent West is out of town for several weeks and I anticipate there will not be much activity in the case in that time frame.  Once Agent West has returned, I am certainly willing to meet and discuss with you the parameters of this case.

I further wish to assure you that should it become necessary to either arrest Mr. Mitchell and/or provide him with a subpoena for an appearance in court, we will cooperate in any such process.  I hope you will find yourself in a position to extend us this courtesy.

I look forward to hearing from you.

Sincerely,

Steven L. Beauvais

SLB/rhs
Enclosure

*CERTIFIED IN CIVIL TRIAL ADVOCACY
NATIONAL BOARD OF TRIAL ADVOCACY

**CERTIFIED IN CRIMINAL TRIAL ADVOCACY
NATIONAL BOARD OF TRIAL ADVOCACY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been delivered to counsel of record by:

    __X__   U.S. Mail addressed to :

         Steven L. Beauvais
         301 W. York Street
         Savannah, GA 31401;

    _____   Hand delivery; or

    _____   Facsimile, followed by U.S. Mail.

Respectfully submitted, this __14th__ day of May, 2007.

Stephen K. Marsh
Assistant United States Attorney
Georgia Bar No. 471398